IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERICA WILLIAMS                    :

                                  :
v.                                     Civil Action WMN-05-969
                                  :

WELLS FARGO HOME MORTGAGE          :

MEMORANDUM

The following motions are currently pending: Defendant's
Motion in Limine, Paper No. 33; Defendant's Motion to Dismiss, or
in the Alternative, for Summary Judgment, Paper No. 49;
Defendant's Second Motion to Compel, Paper No. 52; and
Plaintiff's Motion for Extension of Time to Complete Discovery,
Paper No. 53.  Upon a review of the motions and the applicable
case law, the Court determines that no hearing is necessary,
Local Rule 105.6, and that Plaintiff's motion for an extension
will be denied; Defendant's motion to dismiss or for summary
judgment will be granted in part and denied in part; Defendant's
Second Motion to Compel will be granted, and Defendant's motion
in limine will be granted.

**I. Plaintiff's Motion for Extension to Complete Discovery**

Plaintiff filed this action on March 3, 2005, in the Circuit
Court for Baltimore City.  Defendant timely removed the case to
this Court.  On April 14, 2005, this Court issued a scheduling
order establishing a discovery deadline of August 29, 2005, and a
dispositive motions deadline of September 26, 2005.  On July 21,
2005, the parties requested an extension of the discovery

deadline based upon "unforseen developments in the trial calendar" of Plaintiff's counsel, Paper No. 25, which the Court granted the next day.  On September 28, 2005, the Court granted a second consent motion for an extension of the discovery deadlines, extending the discovery deadline to October 31, 2005, and the dispositive motions deadline to November 28, 2005.

On October 19, 2005, twelve days before the close of discovery under this Court's twice-amended scheduling order, Defendant's counsel received Interrogatories and a Request for Production of Documents from Plaintiff's counsel.  Relying on the provision in this Court's Local Rules that requires that written discovery requests be propounded "at a sufficiently early time to assure that they are answered before the expiration of the discovery deadlines set by the Court," Local Rule 104.2, counsel for Defendant indicated that he would not respond to these untimely requests.  On November 28, 2005, well after the discovery deadline had passed, Plaintiff's counsel expressed her desire to depose a representative of Defendant.  On January 27, 2006, almost three months after the expiration of the discovery deadline, Plaintiff moved for another extension.

Where a party moves for the extension of a court-ordered deadline <u>after</u> the date specified in the Court's scheduling order has expired, the moving party must demonstrate that the failure to act within the time allowed was the result of "excusable neglect."  Fed. R. Civ. P. 6(b)(2); <u>Whichard v. Specialty</u>

<u>Restaurants Corp.</u>, 220 F.R.D. 439 (D. Md 2004).  Here,
Plaintiff's latest motion for an extension provides no
explanation, whatsoever, as to why discovery could not be
completed in a timely manner.  Plaintiff merely recites that
Defendant will suffer no prejudice from such an extension.  In
light of Plaintiff's failure to demonstrate excusable neglect,
the Court will deny the motion for extension of discovery.

**II. Defendant's Motion to Dismiss, or for Summary Judgment**

 <u>A. Factual Background</u>

  According to the Complaint, Defendant acquired Plaintiff's
home mortgage loan from another mortgage loan company in 1998.
In March of 2003, Plaintiff attempted to refinance her loan with
other lending institutions.  Plaintiff alleges that one of those
institutions, Ameriquest, approved Plaintiff for the loan and
sent pay-off documentation to Defendant on or about April 8,
2003.  She further contends that when Defendant received that
documentation, it immediately contacted her in an attempt to
pursuade her not to refinance with a different lender.  Plaintiff
was unpersuaded.  Plaintiff avers, however, that on the very next
day, Defendant "intentionally, maliciously, recklessly, and/or
negligently" reported to all major credit bureaus that Plaintiff
was in bankruptcy.  Compl. ¶ 10.  Although Plaintiff claims that
Defendant acknowledged that this report was erroneous and, on May
16, 2003, advised Plaintiff that it had notified the major

3

consumer reporting agencies of the error, Plaintiff asserts that
Defendant "continued to verify the same fraudulent bankruptcy
information to the credit reporting agencies until September
2004." Id. ¶ 17.  As a result of this mis-reporting, Plaintiff
alleges that she was consistently denied refinancing and was
forced to pay higher interest and principal rates for over 18
months.  Id. ¶ 18.

Plaintiff also alleges that on or about December 2, 2004,
she entered into a repayment agreement with Defendant that
modified the terms of her then existing mortgage.  Under this new
agreement, the first payment was due January 5, 2005.  Plaintiff
made that payment on January 7, 2005.  The second payment was due
on February 5, 2005.  Plaintiff states that she contacted
Defendant in early February 2005 and was told that she could
submit the February payment in two installments.  She made the
first installment on February 9, 2005, and the second on February
17, 2005.  While Defendant accepted the first installment, it
returned the second as untimely.  Defendant then commenced
foreclosure proceedings but Plaintiff was able to obtain a
temporary restraining order against the foreclosure from the
Circuit Court for Baltimore City on March 22, 2005.  Plaintiff
apparently was able to find alternative financing.  See id. ¶ 31
(stating that Defendant's actions forced her to incur the expense
of obtaining alternative financing).

It is Plaintiff's position that, while the second payment

under the repayment agreement was technically due on February 5,
2005, her February 17, 2005, installment was timely because it
was made within the 30-day grace period included in her original
contract with Defendant.  Plaintiff states that it was her
understanding that the grace period provision was also applicable
to the new repayment agreement.  Compl. ¶¶ 23-24.

On the basis of these allegations, Plaintiff brings claims
under the Fair Credit Reporting Act, 15 U.S.C. § 1681 <u>et seq</u>
(FCRA) (Counts I and II) as well as a claim for tortious
interference with contract (Count III) and breach of contract
(Count IV).  Defendant's motion to dismiss, or for summary
judgment, challenges each of these four claims.

<u>B. The Fair Credit Reporting Act</u>

Section 1681s-2 of FCRA sets out the responsibilities of
"furnishers of information" to consumer reporting agencies.
There is no dispute that Defendant would be considered a
"furnisher of information" within the meaning of FCRA.  Two
different subsections of § 1681s-2 are potentially implicated by
Plaintiff's complaint.  Section 1681s-2(a) creates a general duty
on the part of furnishers of information to consumer reporting
agencies to provide accurate information.  It is well-settled,
however, that there is no private right of action for violations
of the duties created under this subsection, as its provisions
can only be enforced by governmental agencies and officials.  15
U.S.C. § 1681s-2(d); <u>Scott v. Wells Fargo Home Mortgage, Inc.</u>,

Civ. Action No. 03-786, 2004 U.S. Dist. LEXIS 28781 (E.D. Va. December 15, 2004).

Section 1681s-2(b) addresses the duties of furnishers of information <u>after they are given notice of a dispute</u> regarding information contained in a consumer's report.  This section provides in pertinent part,

> After receiving notice pursuant to [15 U.S.C.] 1681i(a)(2)[1] . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to [15 U.S.C.] § 1681i(a)(2) . . .;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a national basis.

15 U.S.C. § 1681s-2(b)(1)(A-D).[2]  While not unanimous, the vast

---

[1] Subsection 1681i(a) provides that, once a "consumer notifies the [consumer reporting] agency directly of [a] dispute," that agency has five business days to notify the provider of the disputed information of the dispute.  §§ 1681i(a)(1)(A) & (a)(2).

[2] This subsection was amended by the Fair and Accurate Credit Transaction Act of 2003, Pub. L. No. 108-159, to impose additional responsibilities on furnishers of information.  <u>See</u> 1681s-2(b)(1)(E).  These provisions, however, did not take effect until December 1, 2004.  <u>See</u> 12 C.F.R. 222.1(c)(3)(xv).  As

majority of courts have held that there is a private right of
action under § 1681s-2(b).  <u>Elmore v. North Fork Bancorporation,</u>
<u>Inc.</u>, 325 F. Supp. 2d 336, 339 (S.D.N.Y. 2004); <u>see also</u> <u>O'Diah</u>
<u>v. New York City</u>, Civ. No. 02-0274, 2004 WL 1941179 (S.D.N.Y.
Aug. 21, 2002) (collecting cases); <u>but see</u>, <u>Carney v. Experian</u>
<u>Info. Solutions</u>, 57 F. Supp. 2d 496 (W.D. Tenn. 1993) (finding no
private cause of action under § 1681s-2(b)).[3]

Assuming for the purposes of this motion that there is a
private right of action under § 1681s-2(b), Plaintiff would need
to show the following in order to state a claim under that
subsection:

> (1) that she notified a credit reporting
> agency that she disputed the information
> provided by Defendant;
>
> (2) that the credit reporting agency notified
> Defendant of the dispute regarding that
> information; and

---

Plaintiff alleges that Defendant's mis-reporting only continued
through September 2004, Compl. ¶ 17, these new provisions are not
relevant to this action.

[3] In an unreported decision, <u>Beattie v. Nations Credit Fin.</u>
<u>Servs. Corp.</u>, 65 Fed. Appx. 893, 899 (4th Cir. 2003), the Fourth
Circuit adopted the holding of <u>Carney</u>, but with little
discussion.  While the Fourth Circuit has never re-visited this
precise issue in a reported decision, it has affirmed a jury
verdict in favor of a consumer where the consumer brought a
private cause of action under § 1681s-2(b) against a furnisher of
information.  <u>Johnson v. MBNA Am. Bank</u>, 357 F.3d 426 (4th Cir.
2004).  Based upon the decision in <u>Johnson</u> and flaws in the
reasoning of <u>Beattie</u>, one of our sister district courts has
predicted that the Fourth Circuit, if presented with the issue,
would agree with the majority of courts that a private cause of
action does exist under §1681s-2(b).  <u>Scott</u>, 2004 U.S. Dist.
LEXIS 28781 at * 20.

> (3) that Defendant either willfully or
> negligently failed to (a) conduct an
> investigation with respect to the disputed
> information, (b) review all the relevant
> information provided by the credit reporting
> agency, and/or (c) report the results of the
> investigation to the consumer reporting
> agency.

See Scott, 2004 U.S. Dist. LEXIS 28781 at *20-*21.

Here, there is no allegation or evidence that Plaintiff notified a credit reporting agency or that a credit reporting agency notified Defendant of the error. The Complaint is silent as to how Defendant actually learned of the mis-reporting. Plaintiff in her opposition to Defendant's motion only states that she notified Defendant and a state regulatory agency. Opp'n 4 ("Defendant continued to reaffirm this erroneous information to the credit agencies despite Plaintiff giving Defendant notice and filing a complaint with the State of Maryland Department of Labor, Licensing and Regulation ("DLLR"). . . .").[4]

It might appear a trifling point that Plaintiff provided notice to Defendant by some means other than by giving notice to a consumer reporting agency, but the Court cannot ignore the language in the statute. As one court recently observed, "[i]f Congress had meant to create liability for violations once the furnisher had notice from any source of the existence of a

---

[4] Plaintiff supplies no admissible evidence that even that notice was given. Plaintiff states that she was attaching letters from the DLLR with her opposition, Opp'n 5, but there were no attachments, whatsoever, filed with the opposition.

dispute, it would have been a simple matter to say so.  The fact
that it nevertheless limited Section 1681s-2(b) is entitled to
respect."  <u>Elmore</u>, 325 F. Supp. 2d at 340.  <u>See also</u> <u>Scott</u>, 2004
U.S. Dist. LEXIS 28781 at *21 (granting summary judgment for
defendant, a furnisher of information, where plaintiffs provided
no evidence that they notified any credit reporting agency of a
dispute prior to filing the action, but only "repeatedly informed
[defendants] of the dispute").

     Thus, Plaintiff's claims under FCRA will be dismissed.

<u>D. Tortious Interference with Business Relations</u>

     To establish a cause of action for tortious interference
with potential business relations under Maryland law, a plaintiff
must show:

> (1) intentional and willful acts;
>
> (2) calculated to cause damage to the
> plaintiffs in their lawful business;
>
> (3) done with the unlawful purpose to cause
> such damage and loss, without right or
> justifiable cause on the part of the
> defendants (which constitutes malice); and
>
> (4) actual damage and loss resulting.

<u>havePOWER, LLC v. General Electric Co.</u>, 183 F. Supp. 2d 779, 784
(D. Md. 2002).  Not just any conduct that incidentally affects
another's business relationships gives rise to a cause of action;
the conduct must be in some way "unlawful."  "The types of
unlawful means which 'have been held to result in liability' for

interference with prospective advantage" include "'violence or
intimidation, defamation, injurious falsehood or other fraud,
violation of the criminal law, and the institution or threat of
groundless civil suits or criminal prosecutions in bad faith[.]'"
K & K Management, Inc. v. Lee, 557 A.2d 965, 979 (Md. 1989)
(quoting W. Prosser, Handbook of the Law of Torts § 130 at 952-53
(4th ed. 1971)).

     If Plaintiff could establish that Defendant falsely reported
to consumer reporting agencies that Plaintiff was in bankruptcy
in order to prevent Plaintiff from re-financing her mortgage with
another lender, Plaintiff might be able to prevail under this
tort theory.  Defendant, however, has submitted admissible
evidence in the form of an affidavit of one of its employees,
along with supporting documentation, establishing that it did not
report that Plaintiff was in bankruptcy during the relevant time
period.[5]  Aff. of Midge Baker ¶ 17.  Furthermore, when Plaintiff
complained that a bankruptcy had been erroneously reported,
Defendant promptly communicated with the consumer reporting
agencies that any such reference should be removed.  Id. ¶ 12

     Under Rule 56, "[w]hen a motion for summary judgment is
made and supported as provided in this rule, an adverse party may
not rest upon the mere allegations or denials of the adverse
party's pleading, but the adverse party's response, by affidavits

---

     [5] Defendant did report Plaintiff as being in bankruptcy
after Plaintiff undisputedly did file bankruptcy in March of
2005.  Baker Aff. ¶ 17.

or as otherwise provided in this rule, must set forth specific
facts showing that there is a genuine issue for trial.  If the
adverse party does not so respond, summary judgment, if
appropriate, shall be entered against the adverse party."  Fed.
R. Civ. P. 56(e).  See Celotex Corp. v. Catrett, 477 U.S. 3, 17
(1986).  Plaintiff has offered no admissible evidence to refute
Defendant's evidence.  In the brief paragraph addressing
Defendant's arguments for summary judgment on this claim,
Plaintiff simply states, "there is obviously a material issue in
dispute.  Plaintiff contends that Defendant did report a
bankruptcy on her credit report in paragraphs four through twenty
of the complaint."  Opp'n 6.[6]  Plaintiff's reliance on mere
allegations in her complaint is insufficient to defeat summary
judgment.

    D. Breach of Contract

        Plaintiff alleges that Defendant breached its contract with
her when it refused to accept her second February 2005
installment payment.  As mentioned above, it is Plaintiff's
contention that a provision for a 30-day grace period was
included in the original contract and survived subsequent

---

        [6] Plaintiff also makes reference to an EquiFax Report that
she claims identified the account as being in bankruptcy as well
as two letters she received from the DLLR.  Plaintiff failed to
submit the report or these letters, however.  While the Court can
only guess at what these exhibits might establish had they been
submitted, it is hard to imagine how they could provide
admissible evidence that Defendant reported Plaintiff in
bankruptcy.

modifications of that agreement.  Defendant's position is that there was no grace period provision in the original contract or in the subsequent written modifications.  <u>See</u> Mot. 10 n.1. Defendant further contends that if Plaintiff is relying on the assurance given over the telephone that payments would be accepted if made within the understood 30-day grace period, this assurance would represent a new contract.  Because this new contract is an agreement to forebear from commencing a foreclosure proceeding on real property, Defendant asserts that this new contract is subject to the statute of frauds and, because it was not in writing, is unenforceable.

The Court must deny the motion to dismiss as to this claim as it is unclear from the current record whether a 30-day grace period was included in the original agreement.  While neither party directed the Court to this provision, the Deed of Trust that was executed in conjunction with the original note contains a provision that could be interpreted as such a grace period. The Deed of Trust provides:

> (a) Default.  Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
>
> (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
>
> (ii) Borrower defaults by failing, for a period of thirty days, to perform any other

12

> obligations contained in this Security
> Instrument.

Def.'s Exh. 3, Deed of Trust ¶ 9(a).  The Court finds nothing in
the subsequent written modifications that would alter the import
of this provision.

The Court finds that Plaintiff has stated a claim for breach
of contract.

## III. Defendant's Second Motion to Compel

On November 18, 2005, this Court granted Defendant's first
motion to compel answers to interrogatories and ordered Plaintiff
to provide supplementary answers.  Defendant finds still
deficient three of Plaintiff's supplemental answers to
Defendant's interrogatories: Interrogatory 6, which requests the
basis for Plaintiff's damage claims; Interrogatory 19, which
simply asks Plaintiff to identify the dates and amounts for each
mortgage payment made; and Interrogatory 29, which seeks the
legal and factual basis for Plaintiff's punitive damages claim.
The Court agrees that Plaintiff's responses are inadequate.

As to Interrogatory 19, Plaintiff simply states that she is
"without adequate documentation to fully answer this
interrogatory" and then makes no effort to identify those
payments for which she has documentation.  Plaintiff is hereby
instructed to identify those payments about which she has
knowledge.

As to Interrogatory 29, Plaintiff's current response is

largely undecipherable.  She references "short term disability" and pay rates and seems to connect them in some unspecified manner to Defendant's alleged reporting of Plaintiff being in bankruptcy.  In light of this Court's ruling on Plaintiff's FCRA claim, any damages related to Defendant's alleged reporting of Plaintiff in bankruptcy would appear to be no longer relevant. Should Plaintiff contend that she is somehow entitled to punitive damages based upon Defendant's alleged breach of contract, she must respond to this interrogatory in a more complete and comprehensible manner.  Should she fail to do so, the Court will strike the prayer for punitive damages.

It would appear that the scope of Interrogatory 6 may also be significantly limited by this Court's ruling.  The only specific damage that Plaintiff connects to Defendant's refusal of her second February installment payment was the expense of locating alternative financing.  Compl. ¶ 31.  Significantly, Plaintiff does not even list this expense as an element of damages in her current answer to this interrogatory.  Those damages that she does list are identified in so indeterminate a manner as to be useless and are so exaggerated as to strain credulity.

Plaintiff lists as damages:

> (A) Loss of Nursing Home Business Opportunity $250,000.00 (based on fair market value for business as well as quotes from similar businesses at the time);

(B) Loss of Profits (after taxes and expenses
from lost opportunity per year $1,500,000.00)
based on fair market value for business as
well as quotes from similar businesses at the
time;

(C) Injury to credit resulted in above
amounting to over $1,000,000.00;

(D) Loss of opportunity to be debt free
amounting to over $1,000,000.00;

(E) Loss of opportunity to establish viable
pension.

To the extent that Plaintiff is continuing to claim that any of
these damages are related to her breach of contract claim, she
must explain the basis for these damages with clarity and
specificity.

## IV. Defendant's Motion in Limine

In its motion in limine, Defendant seeks to prevent
Plaintiff from offering testimony concerning the value of a
nursing home business that she asserts she could have purchased
had Defendant not reported her as being in bankruptcy.  Like
portions of Defendant's motion to compel, the Court believes that
this motion is largely rendered moot.  Furthermore, to the extent
that damages related to this lost business opportunity remain in
this action, the Court notes that Plaintiff has now named an
expert to offer testimony concerning those damages.  Finally, as
this Court has previously observed, "it is clear that Plaintiff
is not qualified to opine as to the value of or potential revenue
from the lost nursing home opportunity."  Nov. 16, 2005 Letter

Order.

Defendant's Motion in Limine will be granted.


_____/s/_____
William M. Nickerson
Senior United States District Judge


Dated: March 7, 2006